Richard D. De SMET, Pamela Smith De Smet, and Erin De Smet, a minor by her parent and guardian, Richard D. De Smet, Plaintiffs,

v.

Thomas W. SNYDER, James M. Gilmore, Edwin M. Sheppard, Thomas D. Conrad, Thomas Booker, Sandra L. Foote, Roberta Jane Allison and Fond Du Lac County, Defendants.

No. 86–C–963.

United States District Court,
E.D. Wisconsin.

Feb. 12, 1987.

Willis B. Swartwout, III, Brookfield, Wis., for plaintiffs.

John P. Higgins, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

CURRAN, District Judge.

Plaintiffs Richard De Smet, Pamela Smith De Smet and Erin De Smet have brought this civil rights case against Fond du Lac County (Wisconsin), Thomas W. Snyder, the Sheriff of Fond du Lac County, five of his deputy sheriffs (James Gilmore, Edwin Sheppard, Thomas Conrad, Thomas Booker and Sandra Foote), and Roberta Jane Allison, Richard De Smet's former wife. The plaintiffs seek compensatory, exemplary and punitive damages for deprivations of rights provided in the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. *See* 42 U.S.C. §§ 1983 & 1985. They allege that the court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

On October 29, 1986, the court held a scheduling conference during which the parties were given leave to amend their pleadings on or before January 1, 1987. *See* Order of October 29, 1986. Accordingly, on December 29, 1986, the defendants [1] filed an amended answer, asserting the affirmative defense of qualified immunity. They also filed a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Federal Rule of Civil Procedure 12(b)(6). In addition, they seek dismissal of the complaint on the grounds that punitive and exemplary damages are not recoverable in this action and that the individual defendants have qualified immunity. This motion is supported by affidavits and other materials outside the pleadings, so the court must consider it to be a motion for summary judgment. *See* Federal Rule of Civil Procedure 12(b). On the same date they filed their motion the defendants moved for a stay of discovery pending resolution of the qualified immunity issue. This motion was granted. *See* Order of December 20, 1986. Although the parties had approximately three months to conduct discovery before the stay, the plaintiffs have submitted no affidavits or other evidence with their response. They complain about the discovery stay but they have not identified any specific discovery they could have done which would support their position. Therefore, the court must make its determination on the basis of the

---

1. Roberta Jane Allison has not joined in the motion to dismiss, so henceforth she will not be included in the term "defendants."

record as it now stands. *See American Nurses' Association v. State of Illinois,* 783 F.2d 716, 729 (7th Cir.1986). In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court sanctioned the bringing of dispositive motions early-on in a case against governmental officials because "[i]nquiries of this kind can be peculiarly disruptive of effective government." *Id.* at 817, 102 S.Ct. at 2737. The Court explained that questions of law such as whether a defendant is immune from suit can be resolved without a full opportunity for discovery. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985).

According to the allegations of the complaint at bar, Richard De Smet, a former undercover narcotics officer for the State of Wisconsin, went to the Copper Kettle Bar in Fond du Lac County at approximately 10:00 P.M. on September 19, 1985, with his fiancee Pamela Smith [now De Smet]. Richard alleges that he knew that the bartender at the Copper Kettle was a trafficker in illegal drugs and he claims to have observed the bartender giving pills to Pamela. Richard then attempted to lead Pamela from the bar, but she resisted and he left by himself and went to pick up his five-year-old daughter Erin at a babysitter's home. Someone notified the sheriff's department and Pamela executed a complaint against Richard for assault and battery. Richard claims that she was coerced into taking this action.

When Richard and Erin were about two blocks from their home Richard's truck was stopped by a deputy sheriff and he was ordered from the vehicle at gunpoint. Deputy Conrad administered a breathalizer and physical coordination test and searched the truck. On the basis of these tests, Richard was taken into custody and charged with operating a motor vehicle while under the influence of alcohol and also with battery and disorderly conduct. He was jailed overnight. Subsequently, the battery and disorderly conduct charges were dismissed. The charge of operating a motor vehicle while under the influence of alcohol is still pending.

The plaintiffs assert four causes of action stemming from these facts. They allege that:

*Count I:* The defendants used excessive force in arresting Richard.

*Count II:* Defendants Booker, Foote, Conrad coerced Pamela into signing a complaint and into allowing them to search the De Smet residence.

*Count III:* Defendants Booker, Foote, Conrad, Sheppard and Allison conspired to place plaintiff Erin De Smet in the custody of her mother, Roberta Allison and to deprive the plaintiffs of property (Erin De Smet's belongings) without due process.

*Count IV:* Defendants Booker, Foote, Conrad, Sheppard, Snyder and Gilmore refused to conduct a further investigation into the alleged violations of the constitutional rights of the plaintiffs and refused to allow the plaintiffs access to investigative reports concerning the investigation which was conducted. The plaintiffs believe that these reports will show that there was no probable cause to arrest Richard for battery or for driving under the influence of alcohol.

## I. ISSUES

In moving to dismiss, the defendants argue that:

1. No actionable claim has been made against Fond du Lac County in that no official policy or custom has been identified which caused the alleged constitutional violations.

2. Fond du Lac County cannot be held liable for exemplary or punitive damages.

3. Defendants Sheppard, Conrad, Booker and Foote are protected by qualified immunity.

4. The alleged failure to conduct an investigation and to turn over investigative reports is not a constitutional violation.

5. The complaint fails to set forth any allegations against Thomas Snyder or James Gilmore.

6. Defendants Sheppard, Conrad, Booker, Foote, Snyder and Gilmore cannot be held liable for exemplary or punitive damages.

■ As a threshold matter, the plaintiffs maintain that the defendants' amendment of their answer was procedurally improper in that they did not file a motion to amend. For this reason they say that the defense of qualified immunity is not properly before the court. However, the court rules that the defendants' amendment was both timely and proper. The timing of the Amended Answer complied with the court's scheduling order and, although no motion to amend was filed, the court freely allows amendments this early in a lawsuit. *See* Federal Rule of Civil Procedure 15(a). The plaintiffs have shown no prejudice and they have been allowed to test the sufficiency of the newly added affirmative defense of qualified immunity in connection with the pending motion. *See Straub v. Desa Industries, Inc.*, 88 F.R.D. 6, 9 (M.D.Pa.1980).

## II. DISCUSSION AND DECISION

### A. CLAIMS AGAINST FOND DU LAC COUNTY

■ In the first prong of their argument, the defendants say that the claims against the County must be dismissed because the complaint fails to allege that the plaintiffs' deprivation of constitutional rights was caused by any custom or policy of Fond du Lac County as required by the Supreme Court in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiffs maintain that they have alleged a series of events which resulted in deprivations of their rights and that:

> Where a complaint does not point to a specific articulated policy of a city or county, it is not fatal to the claim. The complaint will withstand dismissal if its alleged facts, together with reasonable inferences to be drawn from them, could lead ... a reasonable fact finder to conclude that the actions of the county or

city employee by which plaintiff was unconstitutionally deprived of his liberty were the product of some policy or custom of the government entity. Where the plaintiff alleges a pattern or a series of incidences of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion.

Brief in Response to Motion to Dismiss at 7.

Under *Monell,* a plaintiff may establish municipal liability for deprivations of a constitutionally protected interest if he can show the existence of a policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation. *Monell,* 436 U.S. at 690–94, 98 S.Ct. at 2035–37. In *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court further explained that:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*Id.* 105 S.Ct. at 2436 (footnotes omitted).

Under *Tuttle,* there must be an "affirmative link" between the policy at issue (especially when the policy itself does not establish wrongdoing) and the constitutional deprivation alleged to cast blame on the local government. *Id.* at 2436. In *Pembauer v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court further refined this analysis by recognizing that, under appropriate circumstances, local government liability

may be imposed for a single decision by local policymakers. *See Id.* 106 S.Ct. at 1298. The *Pembauer* Court held that:

> [M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *See Tuttle supra,* at [823], 105 S.Ct., at 2436 ("policy generally implies a course of action chosen from among various alternatives").

*Id.* at 1300. Responsibility for establishing final policy is a question of state law. *Id.*

The De Smets have attempted to bring their claims against the County under the rule of *Monell* and its progeny by arguing that the incidents they allege show a pattern and practice attributable to Fond du Lac County. They maintain that the mere fact that these incidents occurred should give rise to an inference that the defendants acted pursuant to an unconstitutional policy, practice or custom of Fond du Lac County:

> In their complaint, plaintiffs provide a pattern and series of incidences of unconstitutional conduct by sheriffs presumably acting under the color of law and within their duties. While following procedures, sheriffs unlawfully arrested and held the plaintiffs with excessive force, subjected them to an illicit search and seizure in the presence of a third party and conspired to cover-up their activities within a closed investigation which was conducted according to departmental procedures. Had it not been for the procedures, policies and customs of the Fond du Lac County Sheriff's Department, the sheriffs could not have accomplished the violations articulated in the complaint.

Brief in Response to Motion to Dismiss at 7–8.

Although the De Smets claim that they were injured by sheriffs acting pursuant to policies, customs and procedures of Fond du Lac County, they have failed to articulate what these policies, customs and procedures are. In order to accept the De Smets' proposition, the court wculd have to infer that Fond du Lac County has formal or informal policies allowing the use of excessive force, warrantless searches and seizures, and conspiracies to obstruct justice. The court cannot draw this conclusion on the basis of one series of incidents. The De Smets try to argue that these incidents themselves constitute a pattern and practice of unconstitutional conduct by the County, however, all the incidents alleged in the complaint are actually part of the same transaction—the events stemming from the arrest of Richard De Smet for drunken driving and disorderly conduct. Nothing in the complaint suggests that this transaction was anything other than an isolated event unrelated to the County's policy. In this circuit "a plaintiff wishing to assert ... [a local government liability claim under section 1983] must plead facts tending to show a pattern of illegal conduct going beyond a single incident of wrongdoing." *See Rodgers v. Lincoln Towing Service, Inc.,* 596 F.Supp. 13, 20 (N.D.Ill.1984), *aff'd,* 771 F.2d 194 (7th Cir.1985). *See also Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir.1985); *Tamura, Inc. v. Sanyo Electric, Inc.,* 636 F.Supp. 1065, 1067 (N.D. Ill.1986). The De Smets have pleaded no facts showing that others have been injured by any County policies or customs. They have also failed to meet their burden under *Pembauer v. City of Cincinnati* of alleging that a County policymaker[2] responsible for establishing final policy with respect to the subject matter in question made a deliberate choice to follow a course of action from among various alternatives. *Pembaur,* 106 S.Ct. at 1300. Gauged by these standards, the De Smets' complaint insufficiently alleges that they were injured by a County policy. Therefore, all their claims against Fond du Lac County,

---

**2.** It is questionable that in Wisconsin a county sheriff is a policy-making official at all. *See Soderbeck v. Burnett County,* 752 F.2d 285 (7th Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985).

including the claims for punitive damages, will be dismissed.

## B. QUALIFIED IMMUNITY

■ The defendants contend that Sheriff Snyder and his deputies are shielded from damages in this action by qualified immunity. However, the court must raise a threshold question as to the capacity in which the De Smets are suing these individuals. Only when an official is being sued in his personal capacity may he or she raise a qualified immunity defense.

It is not clear from the complaint whether the Sheriff and his deputies are being sued in their personal capacities. The caption of the Complaint does not mention the official capacities of the defendants, but this information is provided in paragraphs 6–11. In its jurisdictional statement the complaint alleges that:

> Each and all of the acts of defendants alleged herein were done by the defendants and each of them not as individuals but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of Wisconsin, the County of Fond du Lac and under color of authority of their offices.

Complaint at ¶ 18. In addition, as to each cause of action, the plaintiffs speak of acts done by the defendants solely in their official capacities. *See* Complaint at ¶¶ 46, 53, 57, 61.

■ When governmental officials are sued in their official capacities, they may not assert any personal immunity defenses. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Brunken v. Lance,* 799 F.2d 337, 340–41 (7th Cir.1986). Because an official-capacity suit is treated as a suit against the governmental entity, "[d]amages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity." *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983). *See also Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir.1986). Thus, if the claims against the individual defendants were meant to be official-capacity suits, they must be dismissed because the court has already concluded that the Complaint fails to state a cause of action under section 1983 against the County of Fond du Lac. But, in case the suits might also have been intended as personal-capacity suits, the court will review the qualified immunity defenses.

The plaintiffs argue that judgment should not be granted on the qualified immunity issue because material facts are in dispute as to whether the individuals acted unreasonably or with malice. They contend that:

> The scope of qualified immunity requires the determination of whether the officials knew or reasonably should have known that the actions they took within the sphere of official responsibility would violate the constitutional rights of the plaintiff or whether they took the actions with the malicious intent to cause a deprivation of constitutional rights or other injury.

Brief in Response to Motion to Dismiss at 5.

■ The plaintiffs' argument does not reflect the current state of the law. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court enunciated an objective standard for determining whether qualified immunity applies. Under this standard a qualified immunity defense can be analyzed without the need to resolve factual issues. Under *Harlow,* governmental officials are subject to damages liability only if their conduct has violated "clearly established" constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738. The *Harlow* Court adjusted the "good faith" standard of the qualified immunity defense to create a wholly objective standard. Under the previous subjective standard immunity was not available if the defendant "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). This subjective defense ele-

ment was found incompatible with the underlying purpose of qualified immunity—that insubstantial claims should not proceed to trial—because the allegation of such intent could easily create an issue of fact for trial. In rejecting the subjective portion of the defense, the Court held that the bare allegations of a malicious intention to subvert constitutional rights would no longer be enough to force government officials to a trial. *Harlow*, 457 U.S. at 817, 102 S.Ct. at 2737. Thus, when the Court objectified qualified immunity, it did away with a subjective analysis of whether the defendant violated constitutional rights. *Wade v. Hegner*, 804 F.2d 67, 69 (7th Cir. 1986). Under *Harlow's* objective standard, the district court must conduct a two-part analysis by asking: (1) Whether the alleged conduct sets out a constitutional violation? and (2) Whether the constitutional standards were clearly established at the time in question? *Wade*, 804 F.2d at 70.

In attempting to apply the *Harlow* standard, the Seventh Circuit has observed that:

> Although the Supreme Court has articulated the rule for qualified immunity, it has not fully explained what it means by the phrase "clearly established statutory or constitutional rights." First, it has not specified which court one must look to in determining whether a right is "clearly" established, *see Harlow*, 457 U.S. at 818 [102 S.Ct. at 2738]. It seems obvious, however, that reliance on Supreme Court decisions alone might be inappropriate (unless they are the only cases ruling on the question), because they are infrequent in comparison to the decisions of the district and appellate courts, and this infrequency could have the practical effect of converting qualified immunity into absolute immunity.
>
> Second, although it has stated that government officials are not "charged with predicting the future course of constitutional law," *Pierson v. Ray*, 386 U.S. 547 [87 S.Ct. 1213, 18 L.Ed.2d 288] (1967), the Court has not explained how close the factual correspondence must be between the actions under consideration

and the decisions that establish the applicable law. Its decision in *Mitchell v. Forsyth* [472 U.S. 511], 105 S.Ct. 2806 [86 L.Ed.2d 411] (1985), suggests, however, that officials are not required to anticipate the extension of existing legal principles.

*Benson v. Allphin*, 786 F.2d 268, 275 (7th Cir.) (footnotes omitted), *cert. denied*, —— U.S. ——, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986).

■ The defendants in the *De Smet* case have the burden of showing that they are entitled to qualified immunity. *See Kompare v. Stein*, 801 F.2d 883, 886 (7th Cir. 1986). To this end they have attempted to show that their actions did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known when the incidents occurred in September of 1985. The plaintiffs, in turn, must overcome the immunity defense by showing that their allegations, if true, did violate constitutional rights clearly established at the time.

■ The plaintiffs' first claim is that the deputies used excessive force in arresting Richard. Defendant Conrad had been alerted to arrest Richard because of a complaint about the altercation at the Copper Kettle. The plaintiffs claim that, after Conrad stopped Richard's truck, the deputy drew his gun and pointed it at Richard in the presence of Erin. There is no allegation of any physical contact by Conrad or his gun with either Richard or Erin.

At the time this incident took place it was well-established that an arresting officer violates an arrestee's Fourth and Fourteenth Amendment rights only by use of force so excessive, so brutal, demeaning, and harmful as literally to shock the conscience of the court. *See Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980). Shortly before the De Smet incident occurred, the Seventh Circuit provided additional criteria for determining whether alleged conduct establishes an unconstitutional use of ex-

cessive force. In *Gumz v. Morrissette*, 772 F.2d 1395 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986), the court explained that:

> The primary inquiry in addressing an excessive force claim brought under § 1983 is whether the conduct of state officials was so egregious or intolerable as to shock the conscience of the court and constitute a constitutional violation as opposed to a mere violation of state tort law. The Supreme Court has made it clear that "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law," and that "not every injury in which a state official has played some part is actionable under [§ 1983]." Consequently remedies for violation of duties arising out of tort law must be sought in state court.
>
> The right protected by the Fourteenth Amendment in the context of claims of excessive force is "the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as to literally shock the conscience of the court." The determination of whether this right has been violated requires a certain amount of line-drawing, and must be resolved on a case-by-case basis. Three of our sister Circuits utilize a three-part standard to provide guidance in making this delicate determination and we adopt the test. According to this standard the use of force by a state officer is unconstitutional if it 1) caused severe injuries, 2) was grossly disproportionate to the need for action under the circumstances, and 3) was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience.

*Id.* at 1400 (citations omitted).

In *Gumz,* six agents of the Wisconsin Department of Natural Resources drove onto the Gumz property armed with a rifle, pistols and shotguns. Their object was to enforce a civil statute, to seize a dragline, and to arrest Gumz. The court concluded that:

> [T]he only force involved here was the grossly excessive demonstration of manpower and firepower. The only resulting injury or harm was the understandable emotional distress suffered by the unsuspecting and unwary target of the display. Where the undue force underlying an excessive force claim primarily consists of an abstract demonstration of force and not its actual use, a justified finding of liability under § 1983 would be most unusual.

*Id.* at 1401. Similarly, the so-called "excessive force," used in the arrest of Richard consisted only of an abstract display of a gun. The drawing of the gun caused no physical injuries and was not grossly disproportionate under the circumstances where the arrestee was believed to have engaged in a battery and was known to have been drinking. Moreover, no facts have been alleged to show that Deputy Conrad acted with malice. Under these circumstances the alleged acts of Deputy Conrad do not shock the conscience of the court. *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). Therefore, the court concludes that the plaintiffs' first cause of action does not set out a constitutional violation under the standards established at the time in question.

■ In the second count of their complaint, the De Smets claim that defendants Booker, Foote and Conrad conducted an illegal search of the De Smet residence and in the third count they claim that the defendants conspired to deprive the De Smets of property without due process. In support of their motion to dismiss, the defendants have submitted a copy of a document signed by Pamela[3] entitled "Permission to Search." By signing this form Pamela gave permission to search the De Smet

---

**3.** Although Pamela and Richard were not married at the time in question, the plaintiffs allege that Pamela, Richard and Erin resided in the same household. *See* Complaint at ¶ 56.

residence and also gave permission for the taking of any property which the officers "deem pertinent to their investigation."[4] *See* Affidavit of Thomas Booker at Exhibit C. Although the complaint alleges that Pamela was coerced into signing this document, the plaintiffs have offered no evidence to support this contention. Thus, the court must take the evidence in the affidavit to be true. *See Bailey v. Faulkner,* 765 F.2d 102, 104 (7th Cir.1985). No violation of the Fourth or Fourteenth Amendments occurs when a search or taking is done with consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Because there is uncontradicted evidence of consent in this case, the court concludes that no constitutional violations occurred relative to the "search" of the De Smet residence or the "taking" of Erin's belongings.

■■■■ The De Smets' third cause of action also alleges that the defendants conspired to place Erin in the physical and legal custody of her mother, defendant Roberta Allison. The complaint states that the custody of Erin is governed by a court order which is already in place. *See* Complaint at ¶ 59. In general, parents have a constitutionally protected liberty interest in continued association with their children. *See Bell v. City of Milwaukee,* 746 F.2d 1205, 1244–45 (7th Cir.1984). However, the temporary removal of Erin from the De Smet residence resulted in no deprivation of due process. Even without reaching the immunity issue, the court rules that the De Smets' claim concerning the custody of Erin is not cognizable in this court.

■■■■ This is essentially a domestic relations dispute and, for reasons of comity, federal courts do not assume jurisdiction over such matters, even when jurisdiction is predicated on a federal question. *See LaMongtagne v. LaMontagne,* 394 F.Supp. 1159, 1160–61 (D.Mass.1975). Moreover, the Wisconsin statutory scheme

provides for administrative and judicial post deprivation procedures to determine a parent's rights to custody. *See* Wis.Stat. ch. 767 (1983–1984). If a section 1983 action alleges a violation of a procedural due process right involving a liberty interest for which there is an adequate state remedy, then a section 1983 action may not be brought in the federal courts and resort must be made to the available state remedy. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Therefore, because the De Smets have available state remedies, they cannot maintain their claim against these defendants for placing Erin in the custody of her mother.

■■■■ The court notes that the complaint's third cause of action contains the plaintiffs' only allegation of a conspiracy. The De Smets charge:

> That without court order the various defendants above named conspired together to place the minor child Erin De Smet in the physical and purportedly legal custody of her mother Roberta (Smet) Allison;

Complaint at ¶ 58. The plaintiffs cite both section 1983 and section 1985 as providing redress for the alleged conspiracy. The parties have not discussed the conspiracy issue in their briefs, but a resolution of this claim flows from their arguments on the substantive issues. To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege not only that the defendants conspired under color of state law to deprive them of their constitutional rights, but also that they were in fact deprived of those rights. *See Vaden v. Village of Maywood, Illinois,* 809 F.2d 361, 366 (7th Cir.1987). Thus, because the third cause of action does not allege any constitutional violation, the De Smets' conspiracy claim under section 1983 must also fail.

■■■■ The plaintiffs' reliance on section 1985 is misplaced. The complaint does

---

**4.** Although the taking of Erin's belongings may not have been directly pertinent to the investigation of the complaint against Richard, the removal of this property was at least collateral to

the criminal matter because, after Erin's father was arrested, the deputies had to make arrangements for five-year-old Erin's care, so they took her to the home of her natural mother.

not specify under which subsection of section 1985 the suit is brought, but no cognizable claim is stated under any of the three subsections. On its face the complaint is deficient under subsections (2) and (3) of section 1985 because it does not allege facts sufficient to support a claim that the defendants were motivated in their actions by racial or some other type of invidious, class-based discrimination. The De Smets attempt to show that the Fond du Lac County Sheriff's Department discriminated against state undercover narcotics officers. *See* Complaint at ¶ 22. However, Richard admits that he was no longer an undercover agent at the time these events occurred. *Id.* at ¶ 21. In any case, section 1985 does not cover nonracial, political or economic conspiracies. *See generally Grimes v. Smith,* 776 F.2d 1359 (7th Cir.1985). Therefore, section 1985(2) and (3) provides no coverage under the circumstances at bar.

The complaint also fails to state a claim under section 1985(1) because it does not allege facts that support a conspiracy to prevent a public official from discharging his official duties. The allegation is of a conspiracy to deny private individuals of their constitutional rights. *See Lowe v. Letsinger,* 772 F.2d 308, 311 (7th Cir.1985). Therefore, no claim has been stated under 42 U.S.C. § 1985.

▪ Count three of the complaint is also the only count in which the plaintiffs attempt to state a claim against Roberta Allison, Erin's mother and Richard's former wife. Allison is not a governmental official, but a section 1983 action can be maintained against one who conspires with government officials. *See Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980). However, in this case, the court has ruled that the acts alleged as the third cause of action did not violate clearly established constitutional rights of the plaintiffs. Therefore, the claims against Allison must also be dismissed, even though she did not join in the other defendants' dispositive motion.

The only remaining cause of action is found in count four of the complaint where the plaintiffs allege that the defendants failed to turn over "requested copies of investigative reports and of plaintiff Pamela Smith De Smet's signed statements concerning the incidents set forth...." Complaint at ¶ 65. The De Smets also contend that the defendants refused to conduct "an open investigation into the conduct of the Fond du Lac County Sheriff's Department and its officers who are defendants herein as to the violation of [Richard's] constitutional rights and the rights of the co-plaintiffs Pamela and Erin De Smet." *Id.* at ¶ 64.

▪ The court notes that Pamela De Smet's signed statements as well as a number of other investigative reports concerning Richard's arrest have been filed with the court in connection with the defendants' motion. *See* Affidavit of Thomas Booker at Exhibits. Therefore, part of the De Smet's claim is moot. As for the rest, the plaintiffs have not pointed to any clearly established source of their alleged "rights" to an investigation or investigatory materials. In order to make out a claim for deprivation of due process, a claimant must allege that some legally cognizable property or liberty interest has been infringed. *See Paul v. Davis,* 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–1161, 47 L.Ed.2d 405 (1976).

▪ The plaintiffs might be trying to allege that the defendants suppressed exculpatory evidence gathered in connection with the driving while intoxicated, battery and disorderly conduct charges. However, the disorderly conduct charge has been dismissed and the drunken driving charge is still pending, so there is no evidence that these acts have had or will have any actual prejudicial effect on Richard's defense. Therefore, if the De Smets have any claim at all in this regard, it is not yet ripe. *See Christman v. Hanrahan,* 500 F.2d 65, 67 (7th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974); *Jones v. City of Chicago,* 639 F.Supp. 146, 151–52 (N.D.Ill.1986). In addition, comity requires

that, under most circumstances, a federal court should not issue orders with respect to a pending state criminal proceeding. *See generally Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Accordingly, the court concludes that this fourth count of the plaintiffs' complaint fails to set out a constitutional violation.

### SUMMATION AND ORDER

Having examined all the allegations of the De Smets' complaint under the standards set forth in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the court rules that defendants Snyder, Gilmore, Sheppard, Conrad, Booker and Foote are immune from suit because the plaintiffs have not set forth any violations of clearly established constitutional rights. *Id.* at 818–19, 102 S.Ct. at 2738–39. In addition, as discussed above, the plaintiffs have stated no cognizable claims against Fond du Lac County.

Therefore, the court ORDERS that the Motion to Dismiss (filed December 29, 1986 by defendants Snyder, Gilmore, Sheppard, Conrad, Booker, Foote and Fond du Lac County) IS GRANTED with prejudice.

IT IS FURTHER ORDERED that the claims against defendant Roberta Jane Allison ARE DISMISSED with prejudice for failure to state a claim upon which relief can be granted.

IT IS FURTHER ORDERED that summary judgment IS GRANTED in favor of the defendants on all the plaintiffs' claims.

IT IS FURTHER ORDERED that this action IS DISMISSED with prejudice.