384 So.2d 292 (1980)
Richard BERG, Appellant,
v.
STATE of Florida, Appellee.
No. 79-1042.
District Court of Appeal of Florida, Fourth District.
June 11, 1980.
Richard T. Donato of Law Offices of Levi England, Davie, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Marc E. Kirk, Asst. Atty. Gen., West Palm Beach, for appellee.
MOORE, Judge.
This is an appeal from a conviction of possession of cocaine with the intent to deliver. The appellant entered a nolo contendere plea, specifically reserving his right to appeal the trial court's denial of his motion to suppress and his related motion to dismiss.
Appellant's arrest was precipitated by his temporary detention in the Fort Lauderdale-Hollywood Airport, such detention being due to appellant's purported similarity to the "drug courier profile" utilized by airport detectives. Appellant was observed walking from a ticket counter to a metal detector in an extremely nervous manner *293 by Detectives Keeney and Harrer of the Broward County Sheriff's Office. He was visibly shaking and had an overall demeanor of nervousness and apprehension. His odd appearance made the detectives suspicious, and while they were observing appellant approach the metal detector, the appellant made eye contact with them, hesitated for a moment, and then resignedly continued to walk through the detector. At the detector one of the detectives asked the appellant if he could speak with him, advising the appellant that he was not required to speak with either of them.[1] Nonetheless, the appellant consented to speak at this time.
It is undisputed that the detectives conducted their inquiry under nothing more than a mere suspicion based upon the appellant's similarity to the "drug courier profile". The appellant is a juvenile diabetic who was suffering from at least the preliminary stages of insulin shock at the time in question. This was corroborated by medical testimony adduced at the suppression hearing. The appellant stated that his "nervous demeanor" was directly attributable to the irrationality of mind and physical tremulousness produced by the oncoming insulin shock.
When the detectives inquired as to appellant's destination, he responded that he was a union electrician who was going to Seattle to work. The appellant was unable to produce a union card upon request by the detectives. This further aroused the suspicion of the detectives, who then requested if they might examine appellant's baggage. Appellant was carrying a briefcase and had checked other baggage on the flight. The appellant was informed that he was not required to allow the detectives to inspect his baggage, but he replied that he was willing to cooperate. The detectives and the appellant went to the baggage room where the detectives searched appellant's baggage. While searching appellant's briefcase Detective Keeney discovered a brown bag filled with a white powdery substance which he believed to be an illicit substance. Although the appellant claimed that this was a laxative (which eventually proved to be true), the detective placed appellant under arrest.[2] Keeney then conducted three or four field tests of this substance, utilizing at least three different test kits. All of the tests produced negative results, that is, the substance was not indicated to be illicit. While these field tests were being conducted, Detective Harrer was searching appellant's remaining baggage. The search eventually produced the cocaine for which the appellant was ultimately charged with intent to deliver. Keeney testified that after the negative field tests were conducted, but before Harrer's discovery of the cocaine, the appellant requested that the search of his baggage be terminated. Detective Harrer testified that he was unaware of any such request by the appellant prior to the time he discovered the cocaine.
Assuming the initial consent was valid,[3] and that Detective Keeney's discovery of the laxative sufficed to constitute probable cause to arrest appellant, we must then determine the legal effect of appellant's withdrawal of consent after Keeney conducted three or four negative field tests. While it is true that Keeney was mistaken in his belief that the laxative was an illicit substance, his discovery of the white powdery substance gave him a reasonable basis for believing the substance was a proscribed drug. However, any probable cause which *294 Keeney might have had was surely diminished as a result of three or four negative field tests conducted with three different test kits. At this point, the detectives were conducting the search without probable cause, and without appellant's consent, since Keeney himself testified that appellant had requested an end to the search prior to Harrer's discovery of the cocaine. The fact that Harrer did not know of appellant's withdrawal of his prior consent is really immaterial, since appellant clearly indicated his desires to Keeney. Consent to search no longer existed. Appellant's withdrawal of his prior consent tips the evidentiary scales against a finding that a consent to a search was demonstrable by clear and convincing evidence. Because the negative field tests vitiated the existence of probable cause and the appellant withdrew his consent, the detectives' continued search was violative of the appellant's fourth amendment rights, and any evidence produced as a result of such a search should have been suppressed.
Accordingly, the defendant's conviction and the order denying the motion to suppress are reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.
BERANEK and HURLEY, JJ., concur.
NOTES
[1] At the suppression hearing, both of the detectives testified that he was the one who made the initial verbal contact with the appellant.
[2] At the suppression hearing, Keeney testified that he placed the appellant under arrest after the discovery of the laxative substance. However, in the probable cause affidavit which Keeney completed after the arrest, he stated that he arrested appellant only after the discovery of the cocaine itself.
[3] Although the State did not cogently rebut appellant's claim that he was under the influence of a mental defect produced by insulin shock, the trial court must be presumed to have correctly afforded the proper weight to the testimony regarding this issue. Since the trial court was not obliged to believe the appellant's testimony, it could have been justified in finding appellant's claim that he was suffering from insulin shock to be without merit.