**Regina WARLICK, Plaintiff–Appellee, Cross–Appellant,**

**v.**

**Herman CROSS, Defendant–Appellant, Cross–Appellee.**

**Nos. 90–3170, 90–3802.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1991.

Decided July 17, 1992.

Rehearing Denied Sept. 2, 1992.

**304**

Lonny B. Ogus, Leland Shalgos, argued, Chicago, Ill., for plaintiff-appellee.

Judson H. Miner, Davis, Miner, Barnhill & Galland, Sharon Baldwin, Lawrence Rosenthal, Deputy Corp. Counsel, Cheryl J. Colston, Kelly R. Welsh, Asst. Corp. Counsel, Brian Trubitt, argued, Office of the Corp. Counsel, Appeals Div., Chicago, Ill., for defendant-appellant.

Before CUMMINGS and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Regina Warlick sued police officer Herman Cross for arresting her without probable cause. Warlick brought claims under 42 U.S.C. § 1983 for violation of her fourth amendment rights and under Illinois law for false imprisonment and malicious prosecution. The jury found for Warlick on her claim for arrest without probable cause and for Officer Cross on the false imprisonment and malicious prosecution claims. The jury awarded $7,500 in compensatory damages. After trial Officer Cross moved for judgment notwithstanding the jury's verdict relying on the jury's answer to one interrogatory as establishing that he had not "planted" certain evidence which might have supplied probable cause. Officer Cross contended that with that theory of lack of probable cause resolved in his favor, he was entitled to immunity as to any other theory the jury may have followed. Judge Lindberg, perhaps believing that the claim of "planting" was the only possible rationale for finding lack of probable cause, considered the motion as based on an inconsistency between the answer and the verdict in favor of plaintiff on her claim for arrest without probable cause and decided that defendant had waived reliance on the inconsistent answer by failure to object while the jury was still present and available to reconsider its answers and verdict. Fed.R.Civ.P. 49(b). Officer Cross now appeals from the judgment and challenges the denial of his JNOV motion.

## I. BACKGROUND

Chicago police officers, including Officer Cross, executed a valid search warrant for Warlick's home at 745 East 133rd Street, Chicago. The affidavit signed by Officer Cross and included in the warrant described the occupant of the premises as 50–55 years old, five feet tall, 140 pounds, and known as "Mother Mary." Warlick was five feet seven inches tall and 28 years old. During the search the officers were told that Warlick was not "Mother Mary" and that "Mother Mary" lived two doors down from Warlick at 741 East 133rd Street. Although the use of Warlick's address may

have been fortuitous, the validity of the warrant has not been disputed.

During the search of Warlick's home, Officer Cross allegedly found a plastic bag full of white powder, 18 handrolled cigarettes, a narcotics pipe, and a supply of plastic bags on the bedroom dresser. Officer Cross testified that he field tested the white powder and that the powder tested positive for cocaine. Officer Cross then arrested Warlick for possession of cocaine and marijuana. The white powder and hand-rolled cigarettes were sent to the crime lab for testing. The white powder turned out to be baking soda, and the hand-rolled cigarettes did not contain marijuana. Due to the negative crime lab test results, all criminal charges against Warlick were dropped.

Warlick sued Officer Cross for arresting her without probable cause. Following the presentation of all of plaintiff Warlick's evidence, Officer Cross moved for a directed verdict based upon qualified immunity. Judge Lindberg denied the motion. Officer Cross did not renew the motion for directed verdict following presentation of all of the evidence.

Plaintiff Warlick claimed that Officer Cross had "planted" the material on the dresser. At the jury instruction conference, Officer Cross' attorney requested the following special interrogatory: "Did plaintiff prove by a preponderance of the evidence that the defendant did not find the white powder, hand-rolled cigarettes, pipe and plastic bags on the bedroom dresser?"

The jury returned a verdict for the plaintiff on her claim for arrest without probable cause and answered "no" to the special interrogatory. (R. 124.) Judgment was entered on the verdict. Within ten days, Officer Cross moved for judgment notwithstanding the verdict, claiming qualified immunity.

Judge Lindberg must have construed the jury's verdict for the plaintiff on her claim for arrest without probable cause as a finding that the officer had planted the evidence, and thus, the answer to the interrogatory was inconsistent with the verdict. He treated the defendant's motion as a claim under Rule 49(b) that the answer to the interrogatory should prevail over the verdict. Because Officer Cross had not objected to the inconsistency prior to the discharge of the jury, Judge Lindberg concluded that objection to the inconsistency had been waived and implicitly reasoned that Officer Cross could not now, after the judgment had been entered pursuant to the general verdict, rely upon the inconsistent answer as a basis for his JNOV motion.

## II. DISCUSSION

### A.

■ Judge Lindberg's view excluded any possibility that the jury found the evidence was not planted, but nevertheless found probable cause for the arrest lacking. That becomes the critical issue. We must determine whether the Judge erred in following that view of the case and finding the answer to the special interrogatory inconsistent with the general verdict.

> Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment.

*Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). Not only must the answers to multiple special interrogatories be interpreted consistently with each other, but the answers to special interrogatories must be harmonized with the general verdict whenever reasonably possible. *Jewell v. Holzer Hosp. Found., Inc.,* 899 F.2d 1507, 1510 (6th Cir.1990).

■ The question of a defendant's qualified immunity is a question of law for the court, not a jury question. *Alvarado v. Picur,* 859 F.2d 448, 451 (7th Cir.1988). When the issue of qualified immunity remains unresolved at the time of trial, as was the case here, the district court may properly use special interrogatories to allow the jury to determine disputed issues of fact upon which the court can base its legal determination of qualified immunity.

*Rakovich v. Wade*, 850 F.2d 1180, 1202 n. 15 (7th Cir.) *(en banc), cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Whether Officer Cross planted the evidence was a disputed issue of fact. Obviously the question whether he was immune was very different if the evidence had been planted from the situation if the evidence had not been planted, but was found insufficient as probable cause.

The discussion of the proposed special interrogatory at the jury instruction conference clearly shows that it was intended to determine certain disputed issues of fact relating to the qualified immunity defense.

> We are submitting this special interrogatory in order to preserve in particular our immunity defense both for possible post-trial motions or possible appeal because, as your Honor knows, it is our position that if he actually found the things there, at least a reasonable officer could have believed he had probable cause.

> If we don't have the special interrogatory, we would not know whether the jury decided he didn't find them there— he just said he did, or planted them or something; or in the alternative determined, yes, he found them there, but we don't think there's probable cause. (Tr. 702.)

Officer Cross argued to the district court on his JNOV motion that the answer to the special interrogatory could be interpreted consistently with the general verdict. He argued that the answer of "no" to the special interrogatory meant that the jury found that Officer Cross did not plant the evidence in the bedroom or lie about finding the evidence, but actually found the evidence as he testified. He argued, consistent with that interpretation of the special question, that the general verdict for plaintiff Warlick meant that although the jury found that Officer Cross did not plant the evidence, they still found that he lacked probable cause due to the other circumstances. We hold that this interpretation of the answer and the general verdict is a reasonable interpretation that harmonizes the verdict. Judge Lindberg erred in inter-preting the answer as inconsistent with the general verdict when a reasonable interpretation existed which would harmonize the verdict.

Judge Lindberg evidently believed that the jury could not have found that probable cause was lacking without also finding that Officer Cross planted the evidence. However, there were other theories upon which the jury could properly have found lack of probable cause. There was evidence that the baking soda on the dresser could not have reacted positively on a field test for cocaine. The jury could infer either that Officer Cross had not performed a field test, or that he performed one which produced a negative result. Despite his many years of experience, Officer Cross performed no further investigation of the powder to determine whether it was cocaine or some other legal substance.

■ Probable cause exists if the facts and circumstances within the knowledge of the arresting officer and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent officer in believing that the defendant had committed or was committing an offense. *Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Probable cause does not require evidence sufficient to support a conviction, but it does require more than mere suspicion. *Hughes v. Meyer,* 880 F.2d 967, 969 (7th Cir.1989), *cert. denied,* 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990). Officer Cross arrested Warlick for possession of cocaine and marijuana. The jury was instructed that probable cause exists when the arresting officer has knowledge or trustworthy information "sufficient to warrant a prudent person in believing that the person to be arrested had committed or was committing a crime." The jury could have believed that the presence of the narcotics pipe and the baggies, although giving rise to suspicion, were not sufficient to warrant a prudent person in believing that the white powder was cocaine when it had field tested negatively. Thus, the jury may have found no probable cause to arrest for

possession of cocaine, even though it also found the materials had not been planted.

As to the arrest for possession of marijuana, the jury could have believed that the fact that the cigarettes were hand-rolled did not support a reasonable belief that they contained marijuana, and there was no evidence that Officer Cross broke open the cigarettes and examined their contents. The cigarettes were found with the narcotics pipe, but there was evidence that this pipe was of the type for smoking crack cocaine and not for smoking marijuana. Thus, the jury may have concluded that the presence of the pipe did not indicate that the cigarettes contained marijuana and, thus, found no probable cause to arrest for possession of marijuana.

■ Accordingly, the jury could have consistently found that the materials had not been planted, but that their presence did not provide probable cause for arrest. Defendant's motion did not claim that the answer and verdict were inconsistent, but that the answer put him in a position to claim immunity from liability predicated on a finding that the materials he observed did not supply probable cause. It was error to deem he had waived reliance on the answer to the interrogatory.

### B.

■ Warlick argues that the answer to the special interrogatory should be disregarded because the question was drafted in an ambiguous manner and the answer "no" could have multiple meanings. We agree that the special interrogatory could have been drafted more clearly, but we do not agree that the answer could have multiple reasonable and inconsistent meanings. We must consider the answer's meaning in the context of the evidence and arguments presented to the jury.

Warlick argues for two alternate interpretations of the answer. First, Warlick argues that the jury could have answered "no" to the special interrogatory because it found that Officer Cross planted some but not all of the evidentiary items (white powder, hand-rolled cigarettes, pipe and plastic bags) in the bedroom. Second, Warlick argues that the jury could have found that Officer Cross found one or more of the items in some location other than on the bedroom dresser.

The first interpretation is unacceptable because it interprets the answer to the special interrogatory inconsistently with the general verdict for Officer Cross on the state law claims and inconsistently with the answers to the other special interrogatories. The jury was instructed on the elements of Warlick's claim for arrest without probable cause and the elements of the state law claim for false imprisonment. The parties had stipulated to the existence of several elements of the false imprisonment claim. As a result, the only difference between the elements of the arrest without probable cause claim and the contested elements of the false imprisonment claim was that on the false imprisonment claim the jury was required to find that Officer Cross' actions were willful and wanton. (R. 117, Jury Instr. Nos. 21 & 23.) In finding for Officer Cross on the false imprisonment claim, the jury must have found that Officer Cross' actions were not willful and wanton. If the jury, as Warlick suggests, found that Officer Cross had planted some but not all of the items, which clearly would have been willful and wanton conduct, then the answer to the special interrogatory would be inconsistent with the general verdict on the false imprisonment claim. Therefore, this interpretation of the answer is unreasonable.

The jury also answered two special interrogatories with respect to the availability of punitive damages. These interrogatories asked whether the jury found that Officer Cross acted with evil motive or reckless or callous indifference. The jury answered "no," i.e., it did not find evil motive or reckless or callous indifference. Again, if the jury found that Officer Cross planted any one of the evidentiary items, then they would also have found that he acted with at least reckless indifference. Warlick's interpretation of the answer is inconsistent with the answers to the other special interrogatories and cannot be given effect when another reasonable view of the

evidence makes the answers consistent. *See, Atlantic & Gulf,* 369 U.S. at 364, 82 S.Ct. at 786.

Warlick's second alternate interpretation of the answer is unacceptable because it has no basis in the evidence. The jury was not presented with any evidence to support the proposition that Officer Cross found one or more of the items in some location other than on the bedroom dresser nor was such a possibility argued to the jury. Moreover, it would have no impact on the ultimate outcome whether he found all of the items in one place.

### C.

Since we conclude that the special interrogatory answer and the general verdict are consistent, the special interrogatory answer could form the basis for Officer Cross' JNOV motion on qualified immunity. Officer Cross did not move for a directed verdict at the close of all of the evidence, however, and generally, that would preclude him from bringing a JNOV motion. *Hubbard v. White,* 755 F.2d 692 (8th Cir.), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985). *See also,* Fed.R.Civ.P. 50(b). The directed verdict requirement of Rule 50(b) is intended to preserve the Seventh Amendment right to a jury and to allow the nonmoving party to repair factual deficiencies in its case before the case goes to the jury. *Kladis v. Brezek,* 823 F.2d 1014, 1017 (7th Cir.1987). Because neither of these concerns is implicated when the JNOV motion is based upon a pure question of law, such as qualified immunity, this circuit has allowed something less than a formal motion for directed verdict to preserve the right to a JNOV motion based upon a pure question of law. *Benson v. Allphin,* 786 F.2d 268, 274 (7th Cir.), *cert.*

*denied,* 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986).[1]

In *Benson* we allowed a JNOV motion based upon qualified immunity where the moving party had filed a motion for summary judgment prior to trial and a motion for directed verdict at the close of the plaintiff's case. *Id.* at 272. In *Kladis* we allowed a JNOV motion based upon a pure question of law where the moving party had raised the issue at the jury instruction conference. *Kladis,* 823 F.2d at 1017. Officer Cross had moved for a directed verdict based upon qualified immunity following the conclusion of the plaintiff's case.

In addition, at the jury instruction conference immediately preceding closing arguments, Officer Cross' attorney requested the special interrogatory related to qualified immunity. The special interrogatory was intended to allow the jury to determine certain disputed facts with respect to the defense, making a motion for directed verdict prior to submitting the case to the jury a futile exercise in this case. The viability of Officer Cross' qualified immunity defense remained questionable until the jury returned its verdict and answer to the special interrogatory. Warlick, therefore, was surely not prejudiced by the failure to renew the motion at the close of all evidence. Under our case law, Officer Cross sufficiently preserved his right to a JNOV motion on qualified immunity by requesting the special interrogatory.[2]

### D.

We now turn to the question of whether Officer Cross was entitled to qualified immunity and, thus, to judgment notwith-

---

**1.** The 1991 Amendments to Rule 50 may eliminate this exception. The Advisory Committee notes state, "The revision thus alters the result in cases in which courts have used various techniques to avoid the requirement that a motion for a directed verdict be made as a predicate to a motion for judgment notwithstanding the verdict. *E.g., Benson v. Allphin ...*" Fed.R.Civ. Proc. 50(a)(2) advisory committee's note. The 1991 Amendments are not applicable to this case, see Supreme Court Order April 30, 1991,

and thus, we do not decide the future vitality of the *Benson* exception.

**2.** Alternatively, Judge Lindberg could have construed the motion as a motion under Rule 59(e) to alter or amend the judgment because the motion substantively questioned the correctness of the judgment. *See, St. Marys Hosp. Medical Center v. Heckler,* 753 F.2d 1362, 1365 (7th Cir.), *cert. denied,* 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985).

standing the verdict. Qualified immunity is a question of law for the court. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). The jury's verdict against Officer Cross requires that deference be given to plaintiff Warlick's version of the facts when supported by the evidence. *McGee v. Bauer,* 956 F.2d 730, 735 (7th Cir.1992).

■ "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In determining whether the right alleged to have been violated was "clearly established," the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640, 107 S.Ct. at 3039 (citation omitted).

The requirement of probable cause for a lawful arrest was obviously clearly established at the time of Warlick's arrest.

However, in order to determine whether the law was clearly established at the time of the defendant's alleged violation, a court cannot look at the legal norm at issue in the abstract. Rather, the test for qualified immunity is "whether the law was clear in relation to the specific facts confronting the public official when [he or she] acted."

*Green v. Carlson,* 826 F.2d 647, 649 (7th Cir.1987).

■ We, first, address whether the law was clearly established with regard to the probable cause for Warlick's arrest on possession of cocaine. Warlick argues that it was clearly established that the negative field test removed any probable cause that

may have existed. For that argument, Warlick cites a Florida Court of Appeals decision, *Berg v. State,* 384 So.2d 292 (Fla. Dist.Ct.App.1980). The *Berg* court held that three or four negative field tests performed with different test kits vitiated the existence of probable cause. The only other authority addressing the effect of a negative field test on the existence of probable cause was *People v. Rayford,* 725 P.2d 1142 (Colo.1986). In *Rayford,* the Supreme Court of Colorado had held that probable cause could exist despite a negative field test, if sufficient other factors were present to support the probable cause finding.

Plaintiff Warlick bears the burden of showing the existence of a clearly established right. *Rakovich,* 850 F.2d at 1209. One court decision recognizing the right will not fulfill that burden, particularly when another court has disagreed. *See, Lojuk v. Johnson,* 770 F.2d 619, 631 (7th Cir.1985), *cert. denied,* 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986). At the time of Warlick's arrest, the law was not clear in relation to the effect of a negative field test on the presence of probable cause, and it was not clearly established that the materials present would not establish probable cause under these circumstances.

We, next, examine the state of the law with regard to Warlick's arrest for possession of marijuana. Warlick argues that it was clearly established that the existence of hand-rolled cigarettes alone did not create probable cause for an arrest. We agree. *See, e.g., People v. Wright,* 80 Ill. App.3d 927, 36 Ill.Dec. 311, 313, 400 N.E.2d 731, 733 (1980); *People v. Damon,* 32 Ill. App.3d 937, 337 N.E.2d 262, 263 (1975); and *Thomas v. Super. Ct. of San Joaquin County,* 22 Cal.App.3d 972, 99 Cal.Rptr. 647 (1972). However, it was also clearly established that the presence of hand-rolled cigarettes combined with other corroborating evidence indicating that the cigarettes contained a controlled substance could constitute probable cause for an arrest. *See, e.g., Wright,* 36 Ill.Dec. at 313–14, 400 N.E.2d at 733–34 (supporting proof could

consist of arresting officer's expertise in controlled substances, defendant's attempts to conceal item, defendant's evasiveness or abnormal physical condition, or odor of burned marijuana); *Damon*, 337 N.E.2d at 263 (suggesting that evidence of officer's experience with controlled substances or marijuana in particular could establish basis for suspicion that cigarettes contained marijuana); and *Thomas*, 99 Cal. Rptr. at 652 (distinguishing this case from cases where corroborating facts existed).

In particular, the Supreme Court of New Hampshire had held that the presence of a waterpipe or bong of the type used for smoking marijuana and the defendant's attempt to conceal hand-rolled cigarettes were sufficient corroborating evidence indicating that the hand-rolled cigarettes contained marijuana to support probable cause for arrest. *State v. Ruffing*, 127 N.H. 370, 499 A.2d 1351 (1985). In addition, the Michigan Court of Appeals had held that the presence of a hand-rolled cigarette and a "roach clip" was sufficient to establish probable cause for seizure of the cigarette and arrest for possession of marijuana. *People v. Alfafara*, 140 Mich.App. 551, 364 N.W.2d 743, 746 (1985).

In this case, Officer Cross, a thirteen year veteran of the Narcotics Section of the Organized Crime Division of the Chicago Police Department, was conducting a search pursuant to a valid search warrant that directed him to search for controlled substances. During that search he found eighteen hand-rolled cigarettes in a plastic bag, a narcotics pipe, a bag of white powder and a box of baggies together on the bedroom dresser. The question confronting Officer Cross was whether the additional items, the narcotics pipe, baggies and white powder which had field tested negative for cocaine, indicated that the hand-rolled cigarettes contained marijuana. Assuming, as the jury seems to have found, that probable cause was lacking under these circumstances, we cannot say that such a conclusion was the necessary result of clearly established law, thus Officer Cross is entitled to qualified immunity.

### III. CONCLUSION

The judgment of the district court is REVERSED.