**Cheryl L. VAN LOO, Plaintiff,**

v.

**Steve BRAUN, individually and in his official capacity as Chief of Police for the City of Markesan, Wisconsin; Richard Horzewski; Eileen Van Loo; and Elton Van Loo, Defendants.**

No. 95–C–367.

United States District Court,
E.D. Wisconsin.

Sept. 5, 1996.

David Goluba, Ripon, WI, for Plaintiff.

Gregg T. Heidenreich, Stilp, Cotton & Wells, Milwaukee, WI, for Steve Braun.

Jon R. Wilsnack, Stam & Wilsnack, Markesan, WI, for Eileen Van Loo and Elton Van Loo.

John E. Thiel, Godfrey & Kahn, Oshkosh, WI, for Richard Horzewski.

### DECISION AND ORDER

WARREN, District Judge.

Before the Court are two Motions for Summary Judgment filed separately by defendant Richard Horzewski and defendant Steven Braun. For the reasons that follow, the Court concludes that Horzewski and Braun are entitled to dismissal from suit for plaintiff's failure to raise a successful cause of action under 42 U.S.C. § 1983 and under the doctrine of qualified immunity. Therefore, the Court GRANTS both defendants' Motions for Summary Judgment.

### I. PROCEDURAL BACKGROUND AND FINDINGS OF FACT

The plaintiff, Cheryl Van Loo, a resident of Markesan, Wisconsin, was married to Ronald Van Loo. Cheryl and Ronald had three children, Jessie, Jonathan and Laura. In March of 1995, Ronald and Cheryl were going through divorce proceedings. Only Laura, born October 28, 1988, was a minor at the time of the divorce. A temporary court order entered in the divorce proceedings gave

joint custody of Laura to Ronald and Cheryl. Ronald had primary custody of Laura and Cheryl had visitation rights. (June 7 and August 5, 1994 Temporary Orders.)

On March 28, 1995, Ronald Van Loo died. At this time, Cheryl and Ronald's children were living with Ronald's parents, Elton and Eileen Van Loo. On March 29, 1995, Cheryl learned of Ronald's death and also learned that her daughter Laura was staying with her mother and father-in-law. On March 31, 1995, Cheryl called Eileen Van Loo in order to make arrangements to visit Laura on Saturday, as was her usual routine, and requested to take Laura to Ronald's funeral the next day. Eileen told Cheryl that Cheryl and Ronald's adult sons, Jessie and Jonathan, intended to take Laura to the funeral. Cheryl did not want to visit with Laura on Friday and did not attempt to make arrangements to visit Laura on Friday. (Cheryl Dep. at 16–18.)

Following that telephone conversation, Cheryl Van Loo went to the Markesan Police Station to see what she could do about "retrieving [her] daughter from the Van Loo's." (Cheryl Dep. at 20.) The officers she spoke with told Cheryl that they could not assist her. Cheryl Van Loo then telephoned her attorney, David Goluba, who contacted defendant Steven Braun, Chief of Police for the City of Markesan. (Braun Dep. at 9–10.) Chief Braun told Goluba that he could not take any action against Eileen and Elton Van Loo without a court order. (Id. at 14.) Furthermore, Braun, having assessed the situation, determined that no criminal act had taken place and there was no probable cause to make an arrest. (Id. at 15.)

Later, Cheryl Van Loo went to the Green Lake County Sheriff's Department. (Cheryl Dep. at 24, 31.) She spoke with Chief Deputy Sheriff Richard Horzewski who decided that the situation reported by Cheryl posed no threat of imminent danger to Laura Van Loo. (Horzewski Aff. ¶ 6.) Moreover, Horzewski consulted with Judge William McMonigal about Cheryl Van Loo's complaint. (Id. at ¶ 4.) Horzewski later spoke with John Selsing, Family Court Commissioner. (Horzewski Dep. at 15–16.) Horzewski determined that the Sheriff's Department was

under no obligation to assist in what he perceived to be a civil matter and took no further action. (Horzewski Aff. ¶ 5.) Chief Braun called the Sheriff's Department and informed a dispatcher that he wanted to be notified if there was a call from the Van Loo residence. (Braun Aff. ¶ 13.)

During the morning of April 1, 1995, the next day, Cheryl Van Loo and Cheryl's mother, Angeline Laper, arrived at Eileen and Elton Van Loo's residence to take Laura to Ronald's funeral and parked in the Van Loo's driveway. (Cheryl Dep. at 30–32.) Eileen Van Loo contacted the police and Chief Braun was dispatched to the residence to assist in the situation. (Eileen Dep. at 9, 15, 26; Cheryl Dep. at 34–35.) Eileen Van Loo stated in her deposition that she called Chief Braun to assist because she did not want any "fighting and yelling" and because her grandsons, Jessie and Jonathan "were upset" and "wanted that little girl until after the funeral at least." (Eileen Dep. at 15, 26.) Eileen Van Loo believed that Cheryl was not going to attend the funeral. After speaking with all parties, Chief Braun told Cheryl Van Loo that she could return at 6:00 p.m. after the funeral to take Laura. (Cheryl Dep. at 38–40.) Cheryl consented to this compromise and stated "Okay and we'll be there." (Cheryl Dep. at 40.) Ms. Laper testified defendant Braun informed the plaintiff and her that he was "going to see if [he could] work something out," and Ms. Laper was "satisfied" with the arrangement to retrieve Laura at 6:00 p.m. that evening. (Laper Dep. at 29, 37.) Ms. Laper also testified that Cheryl "agreed" with defendant Braun. (Id. at 37.) While assisting in this domestic disturbance, Chief Braun visually observed the Van Loo residence and Laura and believed Laura was not in any danger and that her safety and well-being were not jeopardized. (Braun Aff. ¶ 11.) Cheryl Van Loo returned to the home of Eileen and Elton Van Loo at 6:00 p.m. on April 1, 1995, and picked up Laura. Eileen and Elton Van Loo did not resist Cheryl or give her any trouble. Laura has lived with Cheryl Van Loo since that time. (Cheryl Dep. at 41.)

In an affidavit submitted by Cheryl Van Loo, she states defendant Braun, while at

Elton and Eileen Van Loo's residence, "became enraged and he raised his voice screaming that he was going to arrest [plaintiff and her] mother for trespassing if [plaintiff] did not leave." (Cheryl Aff. ¶ 14.) Ms. Laper testified that Officer Braun raised his voice. (Laper Dep. at 29.) Cheryl Van Loo states she was "directed" or "ordered" to return at 6:00 p.m. to pick up Laura, and did not "negotiate" or "agree" that Laura could stay with her grandparents. (*Id.* at ¶ 17.) Further, the plaintiff states in her affidavit she was intimidated by defendant Braun's yelling and was afraid of being arrested for trespassing.

On April 10, 1995, Cheryl Van Loo filed a complaint alleging that Eileen and Elton Van Loo (a) violated Wis.Stat. § 948.30(1)(b) by detaining a child who was not their own with the unlawful purpose of depriving the plaintiff of the parent/child relationship, the unlawful purpose of usurping plaintiff's parental rights, and the unlawful purpose of controlling the actions, conduct and freedom of the minor child, and (b) intentionally withheld Cheryl Van Loo's minor child from her parents for more than 12 hours, without the consent of the parent, in violation of Wis. Stat. § 948.31(2).

Cheryl Van Loo also claims that Steve Braun and Richard Horzewski (a) violated the First, Fifth and Fourteenth Amendments to the Constitution of the United States by purposefully and deliberately withholding police assistance and depriving Cheryl Van Loo of her minor child and parental rights, (b) violated the Fourteenth Amendment of the Constitution of the United States by singling plaintiff out for differential treatment by refusing law enforcement assistance, and (c) violated Wis.Stat. § 939.05(2)(b) by conspiring with Eileen and Elton Van Loo to violate Wis.Stat. § 948.30(1)(b) and Wis.Stat. 948.31(2) by extending the unlawful detention of Cheryl Van Loo's minor child through the denial of law enforcement assistance.

■ On November 16, 1995, this Court dismissed defendant Lance Buchholtz pursuant to the parties' stipulation for dismissal. Before the Court are defendant Richard Horzewski's fully briefed Motion for Summary Judgment, defendant Steven Braun's fully briefed Motion for Summary Judgment, and numerous Motions to Strike.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331 because the complaint attempts to allege a cause of action

---

1. The plaintiff has submitted three motions to strike and defendant Horzewski has submitted a motion to strike various portions of the opponent's affidavits. Motions to strike are generally disfavored and information "will not be stricken unless it is evident that it has no bearing upon the subject matter of the litigation." *Securities and Exchange Commission v. Jos. Schlitz Brewing Co.*, 452 F.Supp. 824, 833 (E.D.Wis.1978) (quoting *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F.Supp. 277 (E.D.Wis.1975)). Plaintiff filed a motion to strike various portions of Horzewski's affidavit and corresponding portions of Horzewski's motion for summary judgment arguing the statements within the affidavit failed to satisfy the requirements of Fed.R.Civ.P. 56(e). The various statements provided by Horzewski that document the actions Horzewski took in an attempt to assist the plaintiff will not be stricken. Any statements of Judge McMonigal or John Selsing, relayed via Horzewski's affidavit, are hearsay. However, as acknowledged by defendant, the statements of McMonigal and Selsing are not material to Horzewski's motion for summary judgment and are not included to prove the truth of those statements. Nonetheless, any statements of McMonigal and Selsing offered by Horzewski will not be considered by the Court. Furthermore, direct testimony by Horzewski of his impressions, thoughts and decisions concerning

the dispute now before the Court is relevant, although not determinative. Therefore, the plaintiff's first motion to strike is GRANTED in part, and DENIED in part.

Defendant Horzewski filed a motion to strike various materials submitted by plaintiff in opposition to defendant's motion for summary judgment. The Court having reviewed the materials concludes the offered materials are admissible as evidence. Therefore, the defendant's motion to strike is DENIED.

Plaintiff filed a second motion to strike the supplemental affidavit of defendant Horzewski. The materials submitted reply to the opposition brief on summary judgment and support defendant's arguments by introducing additional pages of deposition transcripts. *See Baugh v. City of Milwaukee*, 823 F.Supp. 1452, 1457 (E.D.Wis.1993), *aff'd*, 41 F.3d 1510, 1994 WL 602708 (7th Cir.1994). The plaintiff's second motion to strike is DENIED.

Plaintiff filed a motion to strike portions of defendant Steven Braun's affidavit. Again, direct testimony by Braun of his impressions, thoughts and decisions concerning the dispute now before the Court is relevant, although not determinative. Therefore, the plaintiff's motion to strike is DENIED.

under 42 U.S.C. § 1983. Venue is proper in the Eastern District of Wisconsin because the events or omissions that form the basis of the complaint occurred in this district. 28 U.S.C. § 1391(b).

## II. *STANDARD OF REVIEW*

Summary judgment is no longer disfavored under the Federal Rules. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to 'secure the just, speedy and inexpensive determination of every action.'"). Indeed, Federal Rule of Civil Procedure 56 requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; the requirement is that there is a *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute and that judgment should be entered in its favor. *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir.), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A defendant moving for summary judgment may satisfy this initial burden by pointing to a plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action

alleged. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 323–324, 106 S.Ct. at 2553. A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials," but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

In evaluating a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Griffin v. City of Milwaukee*, 74 F.3d 824, 826–27 (7th Cir. 1996); *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) (citations omitted.)

## III. *ANALYSIS*

### A. *Whether Plaintiff's Complaint Fails to State a Cause of Action under 42 U.S.C. § 1983.*

■ To sustain a claim brought pursuant to Section 1983, a plaintiff must prove that (1) the plaintiff holds a constitutionally protected right; (2) a deprivation of the right occurred; (3) defendants intentionally caused the deprivation; and (4) defendants acted under color of state law. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988).[2]

■ First, the Court will address the plaintiff's argument that defendants Horzewski and Braun violated 42 U.S.C. § 1983 because the defendants aided and abetted a

---

**2.** The statute states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

violation of the state criminal laws prohibiting the unlawful detention of children. The plaintiff invokes Wis.Stat. § 948.30(1) and (2)[3] and Wis.Stat. § 948.31(2). Section 948.31(2) is violated only if a person "withholds a child for more than 12 hours from the child's parents ... without the consent of the parents...." In order to state a cause of action under 42 U.S.C. § 1983, the challenged action must have brought about a deprivation of a right protected by the Constitution of the United States. *Brown v. City of Lake Geneva,* 919 F.2d 1299, 1301 (7th Cir.1990). Even if a violation of state law occurred, this does not give rise to a cause of action under 42 U.S.C. § 1983 unless the Constitution of the United States is implicated.

■ The undisputed facts demonstrate that Cheryl Van Loo attempted to retrieve her daughter during the morning of Ronald Van Loo's funeral on April 1, 1995, at approximately 9:00 a.m., and returned and retrieved her daughter at approximately 6:00 p.m., after Laura attended her father's funeral with her brothers and grandparents. Cheryl's deposition testimony and the deposition testimony of her mother, Ms. Laper, as well as the deposition testimony of defendants, demonstrate that Cheryl *consented* to this arrangement. The arrangement may not have been entirely satisfactory to Cheryl, but she certainly did not convey any dissatisfaction to her mother, to Chief Braun or to Elton and Eileen Van Loo. It is inherently unfair, and frankly, astounding to the Court, that the plaintiff now comes forward, invokes Wisconsin's statute criminalizing the serious crime of child abduction, and claims her daughter was withheld from her. It is clear from the record before the Court that Laura Van Loo's brothers wanted to attend the funeral of their father in the company of their sister. A compromise was reached, with the assistance of Chief Braun, and all parties agreed to this arrangement. Plaintiff's argument that any of the defendants, either individually or as a collective group, improperly withheld her child from her is without merit. The undisputed fact is that Laura Van Loo was not detained by Eileen and Elton Van Loo for an "unlawful purpose" and was not in their custody for more than 12 hours on April 1, 1995. The plaintiff has failed to offer any evidence that either Eileen or Elton Van Loo used force or the threat of imminent force to keep Laura so that she could attend her father's funeral in the company of her brothers and grandparents. Taking the plaintiff's version of the facts, which the Court is obligated to do, including plaintiff's version of the facts in her affidavit, it is clear to the Court that even if defendant Braun "screamed" at plaintiff and threatened to arrest her for trespassing when she was parked in the Van Loo's driveway, there was no violation of Wis.Stat. § 948.30(1) or (2) or § 948.31(2). In the interests of completeness, the Court turns to whether plaintiff has alleged a deprivation of a constitutional right.

**1. The State is under no constitutional duty to protect the life, liberty or property of a citizen from deprivations by private actors.**

■ The Due Process clause of the 14th Amendment provides that "[n]o State shall deprive any person of life, liberty or property, without due process of law." This clause serves as a limitation on the power of the State rather than a guarantee of governmental aid to citizens of the United States. *De-Shaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). *See also Jackson v. City of Joliet,* 715 F.2d 1200, 1202 (7th Cir. 1983), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) (holding that the Due Process Clause of the 14th Amendment

---

**3.** Wis.Stat. § 948.30(1) and (2) state in pertinent part:

(1) Any person who, for any unlawful purpose, does any of the following is guilty of a Class C felony:

(b) Detains a child who is not his or her own by birth or adoption when the child is away from home or the custody of his or her parent, guardian or legal custodian.

(2) Any person who, for any unlawful purpose, does any of the following is guilty of a Class B felony:

(b) By force or threat of imminent force, detains a child who is not his or her own by birth or adoption when the child is away from home or the custody of his or her parent, guardian or legal custodian.

seeks "to protect Americans from oppression by state government, not to secure them basic governmental services"). Nothing in the language of the clause itself requires the State to protect the life, liberty or property of its citizens against invasion by private actors. *DeShaney,* 489 U.S. at 195, 109 S.Ct. at 1003. The absence of this requirement was intended by the framers of the Constitution to limit the scope of governmental obligation and to leave any extension of this duty up to the democratic political process. *Id.* As a result, the State is under no affirmative duty to provide its citizens with protective services nor can the State be held liable for injuries that could have been averted had it chosen to provide them. *Id. See also Camp v. Gregory,* 67 F.3d 1286, 1291 (7th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 2498, 135 L.Ed.2d 190 (1996); *Nelson v. Streeter,* 16 F.3d 145, 150 (7th Cir.1994); *K.H. through Murphy v. Morgan,* 914 F.2d 846, 848 (7th Cir.1990); *Doe by Nelson v. Milwaukee County,* 903 F.2d 499, 502 (7th Cir. 1990). The recognition of any positive duties of care imposed upon the State is determined and regulated by the State itself. *DeShaney,* 489 U.S. at 202, 109 S.Ct. at 1007; *Ellsworth v. City of Racine,* 774 F.2d 182, 186 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Bowers v. DeVito,* 686 F.2d 616, 619 (7th Cir.1982).

■ An exception to the absence of a positive duty of the State to provide basic protective services arises when a State actor creates or assumes a special relationship to particular people. However, this affirmative duty arises only when the State "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *DeShaney,* 489 U.S. at 199, 109 S.Ct. at 1005. *See also Losinski v. County of Trempealeau,* 946 F.2d 544, 550 (7th Cir. 1991). Therefore, this "special relationship" exception is difficult to establish and courts are reluctant to expand the scope of States' liability. *DeShaney,* 489 U.S. at 202, 109 S.Ct. at 1007 (ruling that the Winnebago County Department of Social Services, on notice of the abuse of plaintiff's child, held no duty to protect this child from the reported abuse); *Ellsworth,* 774 F.2d at 186 (holding

that the City of Racine's limited duty to protect plaintiff for eight hours a day did not extend beyond that time period); *Jackson v. Byrne,* 738 F.2d 1443, 1447 (7th Cir.1984) (ruling that fire fighters were under no constitutional duty to act and, therefore, did not deprive citizens of their Due Process under the 14th Amendment by carrying out their strike and leaving the city with a fraction of its former work force).

■ Cheryl Van Loo asserts that defendants Braun and Horzewski violated her constitutional right to protective services and failed to provide law enforcement assistance. Plaintiff also contends that defendants Braun and Horzewski violated her constitutional right to associate with her child by withholding police assistance. However, not only has Cheryl Van Loo failed to allege the violation of a constitutional right that was clearly established at the time of the defendants' actions, but she has also failed to establish the violation of any constitutional right at all. The First, Fifth and Fourteenth Amendment impose no duty upon Defendant Braun of the Markesan Police Department and Defendant Horzewski of the Green Lake Sheriff's Department to provide plaintiff with assistance in retrieving her daughter from Eileen and Elton Van Loo. Moreover, no special relationship existed between either defendant and Cheryl Van Loo that created this type of duty. The undisputed facts are clear that defendant Horzewski assessed the situation on March 31, 1995, and determined that the Sheriff's Department was under no obligation to intervene. When Chief Braun was dispatched to the Van Loo residence on April 1, 1995, he appropriately assisted in helping the parties resolve the domestic dispute.

Cheryl Van Loo fails to raise a genuine issue of material fact regarding her allegation that defendants Braun and Horzewski violated her constitutional right to protective service. Moreover, Cheryl Van Loo fails to raise a dispute of facts as to the violation of her constitutional right to associate with her minor child resulting from defendant Braun and Horzewski's denial of protective service. Defendants Braun and Horzewski are enti-

tled to judgment as a matter of law with respect to these claims.

## 2. Plaintiff's complaint fails to allege a conspiracy among the defendants to violate a protected right.

■ Cheryl Van Loo alleges that both defendants Braun and Horzewski violated Wis.Stat. § 939.05(2)(b) by conspiring with Eileen and Elton Van Loo to violate Wis. Stat. § 948.30(1)(b) and Wis.Stat. § 948.31(2). Under 42 U.S.C. § 1983, a valid conspiracy claim must allege that the defendants conspired under color of state law to deprive the plaintiff of a clearly established constitutional right and that the plaintiff was, in fact, deprived of this right. *De Smet v. Snyder,* 653 F.Supp. 797, 806 (E.D.Wis.1987). *See also Scherer v. Balkema,* 840 F.2d 437, 441 (7th Cir.1988), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988). As discussed previously, the plaintiff has failed to demonstrate a violation of Wisconsin criminal law, and even if plaintiff had successfully raised a genuine issue of material fact, an individual cannot be held liable in an action under 42 U.S.C. § 1983 unless he or she caused or participated in a *constitutional* deprivation. *See Papapetropoulous v. Milwaukee Transport Services, Inc.,* 795 F.2d 591, 595 (7th Cir.1986).

■ Cheryl Van Loo claims that defendants Braun and Horzewski conspired to withhold her constitutional right to protective service and the assistance of law enforcement. There is simply no evidence to support a claim that the defendants conspired against her. Cheryl Van Loo contacted the police and sheriff's department separately. The evidence in the record demonstrates that defendant Horzewski did not know Cheryl Van Loo or anything about the domestic situation with her in-laws and Laura until Cheryl spoke with him on March 31, 1995. Chief Braun did not know Cheryl Van Loo or anything about the domestic situation with her in-laws and Laura until Cheryl spoke with him on March 31, 1995. Sheriff Horzewski did not speak with and discuss the Van Loo situation with Chief Braun. Elton and Eileen Van Loo testified they had no conversation with any representative of the Sheriff's Department regarding the matters alleged in plaintiff's complaint. Sheriff Horzewski was not involved in any aspect of the events that transpired on April 1, 1995. There is no evidence linking defendants Braun and Horzewski or Elton and Eileen Van Loo to any conspiracy. Moreover, it is established that the First, Fifth and Fourteenth amendments do not grant citizens the right to protective service by the State from the invasion of their life, liberty and property by private actors. *DeShaney,* 489 U.S. at 195, 109 S.Ct. at 1003. The plaintiff cannot sue defendants for conspiring to deprive her of a "nonexistent or unprotected right." *Heideman v. Wirsing,* 840 F.Supp. 1285, 1301 (W.D.Wis.1992), *aff'd,* 7 F.3d 659 (7th Cir.1993). Because the right to protective service is not a firmly established constitutional right, Cheryl Van Loo fails to raise a genuine issue of material fact as to how a conspiracy between defendants Braun and Horzewski and Elton and Eileen Van Loo existed in the first place and how this alleged conspiracy violated any of Cheryl Van Loo's rights protected by the United States Constitution.

The record demonstrates that plaintiff contacted Eileen and Elton Van Loo on Friday, March 31, 1996, in order to make arrangements to retrieve her daughter on Saturday, April 1, 1995. Eileen Van Loo informed plaintiff that she could not pick Laura up in the morning of April 1, 1995, because she was going to attend the funeral of her father with her brothers Jessie and Jonathan. The record is undisputed that plaintiff did not attempt to retrieve her daughter until the morning of April 1, 1996 at approximately 9:00 a.m. When the plaintiff arrived at Eileen and Elton Van Loo's residence, a dispute arose. The police were called, Officer Braun was dispatched and arrived on the scene. After a brief discussion with all parties, all parties consented that plaintiff would pick her daughter up from the Van Loo's at 6:00 p.m. Cheryl returned to the Elton and Eileen Van Loo's residence at the appointed time and retrieved Laura without incident. It is clear to the Court that no criminal statute was violated and plaintiff's constitutional rights were not violated.

### 3. Plaintiff fails to allege the denial of equal protection of the law based on her membership in a protected class.

Cheryl Van Loo asserts that defendants Braun and Horzewski differentially treated her report alleging Eileen and Elton Van Loo's violation of Wis.Stat. § 948.30(1)(b) and Wis.Stat. § 948.31(2) by refusing her police assistance and contends this violated her constitutional right to equal protection of the law. The Equal Protection Clause of the 14th Amendment forbids states to "deny to any person within its jurisdiction the equal protection of the laws." A plaintiff bringing an action under the Equal Protection Clause of the 14th Amendment must show intentional discrimination against the plaintiff based on the plaintiff's membership in a particular class. *Huebschen v. Department of Health and Social Servs.*, 716 F.2d 1167, 1170 (7th Cir.1983). *See New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir.1990); *Smith v. Town of Eaton*, 910 F.2d 1469, 1472 (7th Cir.1990), *cert. denied*, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Unjustified disparate treatment of an individual *as an individual* is not grounds for an equal protection claim. *New Burnham*, 910 F.2d at 1481.

Furthermore, the alleged discrimination in a equal protection claim must be "because of," not merely "in spite of," its adverse effects upon an identifiable group. *Huebschen*, 716 F.2d at 1170 (quoting *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)). The burden is on the plaintiff to prove the existence of an intentional or purposeful discrimination by authorities in which one class is favored over another. *Id.* *See also Bohus v. Board of Election Comm'rs*, 447 F.2d 821, 822 (7th Cir.1971). Cheryl Van Loo alleges a deprivation of her right to equal protection of the law but fails to support this allegation with evidence of discrimination by defendants Braun and Horzewski because of plaintiff's membership in a particular group. The undisputed facts point to no instance in which defendants Braun and Horzewski's actions deprived Cheryl Van Loo of reasonable police assistance. Moreover, the undisputed facts fail to show how defendants Braun and Horzewski's treatment of Cheryl Van Loo differed from their treatment of other similarly situated individuals because of plaintiff's membership in a protected class.

### B. Whether Defendants Horzewski and Braun are Entitled to Judgment as a Matter of Law under the Doctrine of Qualified Immunity.

The doctrine of qualified immunity provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which as reasonable person would have known." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 737 (7th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). *See also Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir.1988). Qualified immunity is a judicially created doctrine intended to balance the citizen's statutory or constitutional rights against the reality that few "persons will enter public service if such service entails the risk of personal liability for one's official decision." *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir.1994). Therefore, the doctrine is intended to provide an *"immunity from suit* rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)) (emphasis in the original). *See also Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). The invocation of qualified immunity depends on the "objective legal reasonableness" of the actions taken by the defendants. *Hall v. Ryan*, 957 F.2d 402, 404 (7th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). *See also Auriemma v. Rice*, 910 F.2d 1449, 1451 (7th Cir.1990); *cert. denied*, 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991). Actions taken by local officials are considered objectively unreasonable if the right allegedly violated is clearly established in a "sufficiently particularized sense at the time of the actions at

issue." *Hall,* 957 F.2d at 404. *See also Azeez v. Fairman,* 795 F.2d 1296, 1301 (7th Cir.1986); *Warlick v. Cross,* 969 F.2d 303, 308 (7th Cir.1992) (holding that a government official is immune from suit under the doctrine of qualified immunity unless, under the light of pre-existing law, the unlawfulness is apparent). As a result of this reasonableness test, the doctrine of qualified immunity applies to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ The plaintiff bears the burden of establishing the existence of a clearly established right. *Liebenstein v. Crowe,* 826 F.Supp. 1174, 1183 (E.D.Wis.1992) (quoting *Abel v. Miller,* 824 F.2d 1522, 1534 (7th Cir.1987)). That burden requires the plaintiff to "offer either a closely analogous case or evidence that the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts." *Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir.1993) (citing *Rice v. Burks,* 999 F.2d 1172, 1173–74 (7th Cir.1993)). Therefore, examination of a summary judgment motion based on the doctrine of qualified immunity requires a two-part analysis: (1) Does the alleged conduct violate the plaintiff's constitutional rights?, and (2) If those rights were violated, were the constitutional standards clearly established at the time in question? *Sherman v. Four County Counseling Ctr.,* 987 F.2d 397, 401 (7th Cir. 1993). A negative answer to either prong of the two-part analysis settles the issue.

■ As held previously in the Court's Decision and Order, Cheryl Van Loo has failed to allege the violation of a constitutional right that was clearly established at the time of the defendants' action and has also failed to establish the violation of any constitutional right at all. Cheryl Van Loo does not possess a constitutional right to protective service. The First, Fifth and Fourteenth Amendments impose no duty upon Defendant Braun of the Markesan Police Department and Defendant Horzewski of the Green Lake Sheriff's Department to provide plaintiff with assistance in retrieving her daughter from Eileen and Elton Van Loo.

Second, no special relationship existed that created this type of duty. Moreover, as previously held in the Court's Decision and Order, defendants Braun and Horzewski did not interfere with Cheryl Van Loo's right to associate with her child by withholding police assistance or conspire to deprive her of her daughter during any period of time. Finally, even though no duty existed on behalf of defendant Braun or defendant Horzewski, both individuals assisted Cheryl Van Loo in a reasonable manner.

Defendant Braun not only assessed the situation after speaking with Cheryl Van Loo on March 31, 1995, but he also became involved in the dispute on April 1, 1996, when Cheryl Van Loo arrived at Eileen and Elton Van Loo's residence. Defendant Braun negotiated an agreement between the parties and Cheryl Van Loo's deposition testimony demonstrates that she consented to this agreement. Defendant Horzewski also assessed Cheryl Van Loo's situation on March 31, 1995. In doing so, he consulted both Judge McMonigal and Family Court Commissioner John Selsing and determined the Sheriff's Department was under no obligation to intervene.

Cheryl Van Loo obtained the right to full custody of Laura Van Loo on March 28, 1995, the day of Ronald Van Loo's death. She waited, however, until March 31, 1995, to attempt to assert her custodial rights and did not want to retrieve Laura from Eileen and Elton Van Loo until April 1, 1995. Eileen and Elton Van Loo did not refuse to allow Cheryl Van Loo to take Laura into their custody. Rather, they asked that she retrieve Laura on April 1, 1995 after Ronald's funeral. Cheryl Van Loo ultimately consented to this agreement on April 1, 1995. Therefore, Cheryl Van Loo suffered no deprivation of her parental rights and has had custody of Laura Van Loo since 6:00 p.m. on April 1, 1995. The doctrine of qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law," and it is clear from the record that under this standard, defendants Braun and Horzewski are immune from suit. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. Both individuals assisted Cheryl Van Loo in an objectively

reasonable and nondiscriminatory manner. In conclusion, the conduct of defendants Braun and Horzewski did not violate the Constitution or "clearly established law" and both defendants are dismissed from this lawsuit under the doctrine of qualified immunity.

Finally, defendants argue that they are entitled to summary judgment with regard to any remaining state law claims under Wisconsin law which provides in pertinent part that no suit may be brought against any government "officers, official, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." Wis.Stat. § 893.80(4). "The general rule acknowledged in Wisconsin is that a public officer or employee is immune from personal liability for injuries resulting from acts performed within the scope of the individual's public office." *Barillari v. Milwaukee,* 194 Wis.2d 247, 257, 533 N.W.2d 759 (1995) (citations omitted). The statute provides immunity from liability for the discretionary acts of public officials. *Id.* The Wisconsin Supreme Court noted three exceptions which exist to this general rule of immunity: (1) a public officer or employee does not enjoy immunity if he or she engages in conduct which is malicious, willful and intentional; (2) a public officer or employee is not immune from liability if he or she negligently performs a ministerial duty; and (3) a public officer may face liability when he or she is aware of a danger that is of such quality that the public officer's duty to act becomes absolute, certain and imperative. *Id.* at 257–58, 533 N.W.2d 759. The undisputed facts demonstrate that defendants Braun and Horzewski acted in a discretionary manner and that their conduct was not malicious, willful and intentional. The undisputed facts also show that defendants Braun and Horzewski's actions were not negligent nor did the situation present an absolute, certain and imperative duty to assist Cheryl Van Loo. As a matter of law, defendants Braun and Horzewski are immune from suit under Wis.Stat. § 893.80(4).

C. *Remaining defendants Eileen And Elton Van Loo.*

Because the underlying federal claims creating subject matter jurisdiction have been dismissed against defendants Braun and Horzewski and because the Court has determined no violation of Wisconsin state law occurred, the Court dismisses the claims against Eileen and Elton Van Loo.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that defendants Braun and Horzewski are (1) entitled to judgment as a matter of law because plaintiff fails to state a cause of action under 42 U.S.C. § 1983; and (2) immune from this lawsuit under the doctrine of qualified immunity because their conduct did not violate the constitutional rights of the plaintiff.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion to Strike filed April 24, 1996 is **GRANTED in part and DENIED in part.**

2.  Defendant Horzewski's Motion to Strike filed May 13, 1996 is **DENIED.**

3.  Plaintiff's Second Motion to Strike filed May 23, 1996 is **DENIED.**

4.  Plaintiff's Motion to Strike filed July 18, 1996 is **DENIED.**

5.  Defendants' Motions to Supplement the Motions for Summary Judgment are **MOOT.**

6.  Defendant Richard Horzewski's Motion for Summary Judgment is **GRANTED.**

7.  Defendant Steve Braun's Motion for Summary Judgment is **GRANTED.**

8. Any remaining claims are **DISMISSED** and this case is **DISMISSED** in its entirety.